# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Jose M. Dominguez, ) | Case No. CV 07-717-PHX-PGR (JM) |
| Petitioner, ) | **REPORT AND RECOMMENDATION** |
| v. ) | |
| Dora B. Schriro, et al., ) | |
| Respondents. ) | |

Pending before the Court is Petitioner Jose M. Dominguez's Petition for Writ of Habeas Corpus [Docket No. 1]. In accordance with the Rules of Practice of the United States District Court for the District of Arizona and 28 U.S.C. § 636(b)(1), this matter was referred to the Magistrate Judge for report and recommendation. As explained below, the Magistrate Judge recommends that the District Court, after an independent review of the record, dismiss the Petition with prejudice.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. Factual Background

As described by the Arizona Court of Appeals, the events leading to Petitioner's prosecution are as follows:

> On March 12, 2000, Phoenix police officers stopped an automobile in which [Petitioner] was the passenger and arrested the driver on an existing warrant. The officers ordered the two men out of the vehicle in order to search the passenger compartment incident to the driver's arrest, and in doing so, [Petitioner] spontaneously stated that he had a concealed firearm on his person.
>
> The officers then arrested [Petitioner] for carrying the concealed weapon without a permit and searched him, finding not only a firearm but also possible drug paraphernalia (i.e., a

> small glass pipe). Under the passenger's seat, the officers found two plastic bags, each containing a white substance that the officers' field test identified as methamphetamine. In addition to the methamphetamine, the officers also found an electronic scale. At trial, the officers testified that when they stopped the vehicle, [Petitioner] leaned forward, as if he was attempted to conceal something under the passenger seat.

(Exhibit RR.)[1]

## B. Procedural Background

### 1. Indictment and Trial

Based on this incident, on April 11, 2000, the Maricopa County Grand Jury indicted Petitioner on three charges in CR 2000-005622: possession of dangerous drugs for sale, a Class 2 felony (Count 1); possession of drug paraphernalia, a Class 6 felony (Count 2); and misconduct involving weapons, a Class 4 felony (Count 3). (Ex. A.) The State also alleged that Petitioner had four historical non-dangerous felony convictions. (Ex. B.) On July 6, 2000, the State added the allegation that Petitioner committed the charged offenses while on bond or on his own recognizance in CR-2000-05740[2] for possession of drugs, possession of marijuana, and possession of drug paraphernalia, for purposes of enhancing any sentence of imprisonment by an additional two years pursuant to A.R.S. § 13-604(R). (Ex. C.) On September 19, 2000, Petitioner appeared in court and the trial court set the trial for October 2, 2000. (Ex. D.)

On October 2, 2000, Petitioner and his defense counsel appeared in court for the first day of trial for case number CR 2000-005622. (Ex. G, p. 4.) Over objection, the trial court granted the State's motion to amend Count 3 of the indictment to allege that Petitioner possessed a handgun during the commission of the felony of possession of dangerous drugs for sale rather than alleging that Petitioner possessed a handgun while being a prohibited

---

[1] Unless otherwise noted, all referenced exhibits are those attached to Respondent's Answer to Petition for Writ of Habeas Corpus [Docket No. 13].

[2] The State originally filed this matter in error as cause number CR 2000-00406392. (Ex. GG at n. 1.)

possessor. (*Id*., p. 4-5.) The State also moved to consolidate and try the matter in conjunction with CR 2000-05740, but the motion was denied. (*Id*., p. 5.)

The trial court then held *voir dire* to select a jury. (Ex. G., pp. 8-41.) After a recess for lunch, the clerk of court called the names of the jurors chosen to try the case. (*Id*., pp. 41-42.) After the jury was sworn, the trial court held a bench conference with the attorneys to discuss Petitioner's absence from the courtroom, and the trial court found that Petitioner was voluntarily absent, instructed the jury not to consider his absence, and the Petitioner was tried *in absentia*. (*Id*., pp. 42-43.) At a later recess, the trial court noted that a bench warrant would issue for Petitioner's arrest. (*Id*., p. 88.)

The next morning, on October 3, 2000, the trial court again noted that Petitioner was absent and that the trial would proceed in his absence. (Ex. H, p. 4.) The prosecutor called two witnesses, both police officers, to prove up Petitioner's prior felony convictions. (*Id*., pp. 5-12.) Later that day, the jury found Petitioner guilty on Count 2 (possession of drug paraphernalia) and County 3 (misconduct involving weapons), but could not reach a verdict on Count 1 (possession of dangerous drugs for sale). (*Id*., pp. 45-48.) The trial court declared a mistrial on Count 1. (*Id*., p. 48-49.)

After the jury was dismissed, the trial court stated that, "[p]ursuant to conversation with counsel in chambers, since the defendant is not present, the Court is not inclined to set a trial date at this time, but rather to set a status conference to see whether or not the defendant is going to be able to be here on Count 1." (Ex. H, p. 49.) Defense counsel agreed to setting the status conference for November 3, 2000. (*Id*.)

The trial court then stated that, "having heard the testimony," it would "take judicial notice as far as Exhibits 1, 2 and 3, that the trial on the priors, that the Court believes was tried in conjunction with the trial in this matter, these exhibits came into evidence and, therefore, the Court finds that the defendant" was convicted of the three historical prior felony convictions. (*Id*., pp. 49-50.)

Defense counsel then sought to have the trial court to decide how to proceed on the CR-2000-05740 matter, which was scheduled to proceed at the conclusion of the trial on the

1  CR 2000-05622 matter. After initially suggesting that it be set for a status conference at the
2  same time as the conference scheduled to address the count remaining in CR-2000-05740,
3  the trial court granted the State's request and issued a bench warrant. (*Id*., p. 50.)

4  Finally, at the prosecutor's request and with defense counsel's agreement, the trial
5  court took judicial notice that Petitioner's convictions on Count 1 and Count 2 in Cr.-2000-
6  005622 showed that the two counts "were committed while the defendant was out on the
7  other cause number, on CR-2000-05740. And, pursuant to 13-604(R) the defendant would
8  be sentenced accordingly." (Ex. H, pp. 50-51.)

9  On November 3, 2000, Petitioner failed to appear and the trial court vacated the status
10 conference and affirmed the bench warrant. (Ex. J.) On January 2, 2001, the trial court held
11 the initial hearing on the bench warrants for both cause numbers, CR 2000-05622 and CR
12 2000-05740, and Petitioner personally appeared with counsel. (Ex. K.) The trial court set
13 the sentencing hearing for the two counts of conviction from CR-2000-05622, along with a
14 status conference for both CR-2000-05740 and Count 1 from CR-2000-05622, for February
15 2, 2001. (*Id.*)

16 On February 2, 2001, Petitioner personally appeared in court with his counsel. (Ex.
17 L.) At defense counsel's request, and Petitioner's agreement to "waive all applicable time
18 limits," the trial court granted a continuance of the next hearing on both cases until March
19 2, 2001. (*Id.*) The trial court also amended the January 2, 2001 minute entry (Ex. K) to
20 reflect that the new trial on the matter under CR 2000-05740 and on the remaining count in
21 CR 2000-005622 had a "last day" for trial of February 16, 2001. (Ex. L.) The trial court also
22 noted that the Petitioner, "having agreed to waive all applicable time limits this date, IT IS
23 ORDERED excluding all time from February 2, 2001 to March 2, 2001 (28 days)," and
24 accordingly noted that the new last day for both pending matters (CR 2000-05622's Count
25 1 and the matter under CR 2000-05740) became March 16, 2001. (*Id.*)

28 On March 2, 2001, the trial court held the hearing on both of the two cause numbers

at which Petitioner personally appeared with counsel. (Exs. N & O.) The trial court entered judgments of guilt on both of the two counts in CR 2000-005622 on which the jury determined Petitioner's guilt and found that Petition committed each of those two crimes with three historical prior felony convictions. (Ex. N, p. 3.) After finding that the aggravating and mitigating circumstances balanced each other out, the trial court sentenced Petitioner on Count 3 (misconduct involving weapons) with three historical prior felony convictions to the presumptive term of 10 years' imprisonment, plus an additional two years for committing the crime while on release or on his own recognizance under A.R.S. § 13-604(R). (*Id*. at 8.) The trial court also concurrently sentenced Petitioner on Count 2 (possession of drug paraphernalia) to the presumptive term of 3.75 years' imprisonment with three historical prior felony convictions, plus an additional two years for committing the crime while on release or on his own recognizance under A.R.S. § 13-604(R). (*Id*., p. 9.)

At the end of the sentencing hearing, the trial court dismissed CR 2000-05740 without prejudice and granted defense counsel's request for the trial court to set the new trial on the remaining count from CR 2000-005622 (possession of dangerous drugs for sale) for April 10, 2001, and excluded any time between the sentencing hearing and the April 10 trial date. (*Id*., pp. 9-10.) In a separate minute entry order issued on the same day, the trail court excluded "all time from this date through April 10, 2001 (39 days)" and established a new last day of "April 24, 2001 as to Count 1 in CR 2000-005622." (Ex. P.)

On April 5, 2001, the Maricopa County Grand Jury indicted Petitioner on the Count 1 (possession of drugs for sale) from CR 2000-005622, and it was assigned a new cause number: CR 2001-05004. (Exs. Q & R.) On April 10, 2001, the trial court vacated that day's trial date of April 10, 2001. The court indicated in the order that Petitioner had not been transported from the Arizona Department of Corrections and that "[p]ossible new charges pending set for Court appearance on April 19, 2001 which may make Count 1 in this matter a moot issue." (Ex. T.) The trial court set a new trial date of April 20, 2001, ordered that no time be excluded, and reaffirmed that the last day remained April 24, 2001. (*Id*.)

On April 20, 2001, Petitioner appeared in court with counsel. (Ex. U.) The trial court

granted the State's oral motion to dismiss Count 1 without prejudice and vacated the trial. (*Id.*) On May 31, 2001, the trial court held a pretrial conference at which Petitioner was not present but a different defense attorney appeared for defense counsel Joel Brown. (Ex. V.) The trial court noted that Petitioner was not present in court and granted defense counsel's oral motion for a continuance. (*Id.*) The trial court continued the pretrial conference for four days (from May 31 to June 4, 2001) and excluded that four days of time, resulting in a new last day of July 27, 2001. (*Id.*)

On June 4, 2001, Petitioner appeared with counsel for the initial pretrial conference. (Ex. W.) The trial court set the trial for July 2, 2001, and ordered that the date "SHALL NOT BE CONTINUED ABSENT A SHOWING OF GOOD CAUSE AND/OR EXTRAORDINARY CIRCUMSTANCES . . . ." (*Id.*) The trial court ordered that "no time be excluded" and ordered, inconsistently with its previous order that the last day was July 27, 2001 (Ex. V), that the "LAST DAY REMAINS: July 23, 2001." (*Id.*) The trial court also directed counsel to "recompute the new last day and advise the trial division if the computation is in error." (Ex. W.) Two days later, on June 6, 2001, the State filed its allegation of historical priors in which it alleged the same four prior felony convictions that it had alleged in the first trial under CR 2000-05622. (Ex. X.)

### 2. 1 CA-CR 01-0263: Direct Appeal of CR 2000-005622 Count 2 and Count 3

On June 27, 2001, Petitioner filed a counseled opening brief in the Arizona Court of Appeals under cause number 1 CA-CR 01-0263 to challenge the judgment in the first trial that occurred under CR 2000-05622. (Ex. Y.) Petitioner's sole claim on appeal was that insufficient evidence supported the trial court's finding that he committed the two offenses while on release. (*Id.*, pp. 6-8; Ex. GG & HH.)

On January 22, 2002, in 1 CA-CR 01-0263, the Arizona Court of Appeals affirmed Petitioner's conviction from his first trial, but vacated the sentence enhancements and remanded for re-sentencing. (Ex. KK.) The appeals court held that the determination that a defendant committed a crime while on release under A.R.S. § 13-604(R) must be made by

a jury, not a trial judge, and remanded the matter under *Apprendi v. New Jersey*, 530 U.S. 466 (2000) and *State v. Gross*, 201 Ariz. 41, 42, 31 P.3d 815, 816 (App. 2001), for a new trial on the sentence-enhancement issues. (Ex. KK, pp. 2-3.)

On April 23, 2002, the trial court held the re-sentencing hearing. (Ex. NN.) After the prosecutor moved to dismiss the on-release allegations, the trial court sentenced Petitioner to the same presumptive, concurrent terms as before, only without the two 2-year enhancements: 10 years' imprisonment for Count 3 (misconduct involving weapons with two historical prior felony convictions) and 3.75 years' imprisonment for Count 2 (possession of drug paraphernalia with two historical prior felony convictions). (Ex. NN, pp. 4-5; Ex. OO.) On September 26, 2002, the Arizona Supreme Court summarily denied the State's petition for review of the Arizona Court of Appeals decision in 1 CA-CR 01-0263 that had ordered the re-sentencing, and the appellate court subsequently issued its mandate. (Ex. MM, VV-WW.)

On April 28, 2003, Petitioner filed a counseled *Anders* brief in the Arizona Court of Appeals in 1 CA-CR 02-0898 to challenge the post-re-sentencing judgment. (Ex. FFF.) In original emphasis, defense counsel wrote that the trial court "thereupon **re-sentenced** [Petitioner] – **this time without the enhancements or A.R.S. § 13-604(R)** – to the **presumptive, concurrent** terms of 3.75 years in the Arizona Department of Corrections for the non-dangerous, repetitive Class 6 felony Possession of Drug Paraphernalia, and to 10 years for the non-dangerous, repetitive Class 4 felony Misconduct Involving Weapons, each with credit for 516 days served (R.T. April 23, 2002)." (*Id*., pp. 1-2.) At the end of the brief, counsel disclosed that Petitioner wished to raise claims of ineffective assistance of counsel and insufficiency of the evidence. (*Id*., p. 3.) Counsel also filed a motion for leave to allow Petitioner to file a supplemental brief *in propria persona*. (*Id*.)

On July 10, 2003, the Arizona Court of Appeals noted that Petitioner had not filed a supplemental brief and affirmed the judgement under 1 CA-CR 02-0898. (Ex. GGG.) The court found that Petitioner's re-sentencing was free of error. Relying on the Arizona Supreme Court's decision in *State v. Spreitz*, 202 Ariz. 1, 39 P.3d 525 (2002), the court

- 7 -

concluded that it could not consider Petitioner's claim of ineffective assistance because such claims "must first be presented to the superior court in a petition for post-conviction relief." *Id.*, p. 3.) The court also did not consider Petitioner's insufficient evidence because it was considered and rejected in Petitioner's first appeal. (*Id.*, pp. 3-4.) On August 25, 2003, the Arizona Court of Appeals noted that Petitioner had not filed a motion for reconsideration or a petition for review by the supreme court and, accordingly, issued its mandate. (Ex. HHH.)

### 3. Second Trial on Count 1: Possession of Dangerous Drugs for Sale

Count 1 from cause number CR 2000-005622 was redesignated CR 2000-05004 for the second trial. On June 4, 2001, the trial court conducted an Initial Pretrial Conference and set the trial for July 2, 2001. (Ex. W.) On June 6, 2001, the State filed its Allegation of Historical Priors alleging four historical non-dangerous felony convictions. (Ex. X.) On July 2, 2001, the State filed two motions. First, the State requested that the trial court take judicial notice of the previous trial under CR 2000-005622, and that "all rulings contained therein become binding under the doctrines of Res Judicata, Collateral Estoppel, an [sic] Law of the Case." (Ex. Z, pp. 1-2.) Second, the State again alleged that Petitioner committed the charged offense while on release in CR 2000-00406392 (CR 2000-05740) for possession of drugs, possession of marijuana, and possession of drug paraphernalia, for purposes of enhanced sentencing under A.R.S. § 13-604(R). (*Id.*, pp. 3-4.)

The two day trial began on July 2, 2001. (Ex. AA.) Appearing with defense counsel Joel Brown outside of the jury's presence, Petitioner asked the trial court to dismiss defense counsel and complained that Count 1, which had been dismissed and refiled, had taken to long to get to trial. (*Id.*, pp. 4-5.) The trial court denied Petitioner's request to dismiss counsel and found no merit to Petitioner's complaint about the delay in reaching trial. (*Id.*, pp. 4-6.) Despite the court recommending he do otherwise, Petitioner declined a pending plea offer which would have resulted in him serving no additional time than that previously imposed after his conviction on Counts 2 and 3. (*Id.*, pp. 4-9.)

At the close of evidence, the prosecutor, in his rebuttal closing argument, made several references to the defense's failure to call witnesses or produce evidence to rebut the

State's case. (Ex. BB, pp. 36-38.) Defense counsel objected to these references and the trial court sustained all five objections, at one point telling jurors that:

> the only burden in the case is on the State to prove their case beyond a reasonable doubt, as I'll instruct you. Defendant doesn't have any burden to offer evidence, to produce evidence, or to prove anything.

(*Id.*) The trial court also told the jury in the jury instructions that "[t]he State has the burden of proving defendant guilty beyond a reasonable doubt," and that "Defendant is not required to produce evidence of any kind." (*Id.*, pp. 43-44.)

After the conclusion of closing arguments, the trial court gave the final jury instructions and, after deliberation, the jury convicted Petitioner as charged. (*Id.*, pp. 56-59.) The trial court adopted the findings made by Judge Reinstein in the first trial (CR 2000-05622) that Petitioner had three historical prior convictions, and also took judicial notice that Petitioner committed the present crime while on release in CR 2000-05740. (*Id.*, p. 60; Ex. CC, pp. 7-8.)

On August 7, 2001, the trial court sentenced Petitioner on Count 1 to the presumptive term of 15.75 years' imprisonment for the Class 2 felony of possession of dangerous drugs for sale with two historical prior felony convictions, plus an additional 2 years for committing the crime while on release, for a total sentence of 17.75 years. (Ex. EE, p. 4.) The trial court ordered the sentence to run concurrently with the sentence imposed in CR 2000-05622 and any other sentences being served. (*Id*, p. 4; Ex. FF, p. 3.)

### 4. Third Direct Appeal

On December 10, 2001, Petitioner's counsel filed an *Anders* brief in 1 CA-CR 01-0759, appealing the judgment in CR 2001-05004. (Ex. II.) In the brief, counsel identified three issues Petitioner indicated he wanted to raise: (1) ineffective assistance of counsel and an alleged conflict of interest of trial counsel; (2) improper expert testimony by Detective Mendez that the drugs were for sale; and (3) the failure of the trial court to declare a mistrial after the prosecutor repeatedly commented on Petitioner's silence and failure to put on evidence. (Ex. 11, p. 5.) Counsel indicated that he had filed a motion for leave to allow

Petitioner to file a supplemental brief *in propria persona.* (*Id.*, p. 6.)

On January 11, 2002, Petitioner filed a *pro se* supplemental opening brief. (Ex. JJ.) Petitioner argued that his trial counsel rendered ineffective assistance by failing to suppress evidence, failing to object to Detective Mendez's testimony, failing to move for a mistrial, and having a conflict of interest, and failing to object that his rights to a speedy trial under Rule 8 of the Arizona Rules of Criminal Procedure were violated. (*Id.*, pp. 1-3.)

On March 27, 2002, the Arizona Court of Appeals ordered supplemental briefing on the following three issues:

> 1. Should [Petitioner's] sentence be vacated and the case remanded for a trial by jury on the issue of his release status on March 12, 2000, in accordance with *State v. Gross*, 201 Ariz. 41, 31 P.3d 815 (App. 2001)?
>
> 2. Should [Petitioner's] sentence be vacated and the case remanded for retrial on the issue of prior convictions, because the trial court took judicial notice of the prior convictions, rather than receiving evidence and making findings based on that evidence? *See State v. Lee*, 114 Ariz. 101, 105, 559 P.2d 657, 661 (1976); *but see State v. Freeland*, 176 Ariz. 544, 549, 863 P.2d 263, 268 (App. 1993).
>
> 3. Was there any violation of Rule 8 or [Petitioner's] speedy trial rights due to the delay from the date of the mistrial on the possession of sale charge, October 3, 2000, until the retrial on that charge in August, 2001?

(Ex. LL.)

In Petitioner's counseled supplemental opening brief, Petitioner argued that (1) his sentences should be vacated and remanded for a jury trial on Petitioner's release status, and (2) his sentences should be vacated and he should be sentenced as a non-repetitive offender because there was insufficient evidence of Petitioner's prior felony convictions. (Ex. PP, pp. 3-8.) Petitioner's counsel conceded, however, that the record did not support a finding that Petitioner's Rule 8 or speedy trial rights had been violated. (*Id.*, pp. 6-7.)

On July 5, 2002, the Arizona Court of Appeals affirmed Petitioner's convictions, remanded for a jury trial on Petitioner's on-release status, and remanded for a bench trial on the existence of Petitioner's prior convictions. (Ex. RR.) On Petitioner's claim of ineffective

assistance, the appellate court observed that its analysis later in the memorandum decision resolved the substantive issues of the expert testimony and closing argument, but followed Arizona law in declining to address the fact intensive and tactic questioning ineffective assistance claim on direct review, as opposed to a post-conviction proceeding under Arizona Rule of Criminal Procedure 32. (*Id*., pp. 5-6.) The appellate court denied the remaining (non-sentencing) claims for lack of merit. (*Id*.)

Both Petitioner and the State petitioned the Arizona Supreme Court for review, with Petitioner arguing only that his right to a speedy trial had been violated, and the State arguing only that the status of pretrial release is not an element of an offense that warrants determination by a jury. (Exs. TT & UU.) The Arizona Supreme Court summarily denied both of the petitions for review. (Exs. XX & ZZ.)

### 5. Re-Sentencing in CR 2001-005004

On January 13, 2003, Petitioner filed a counseled motion for a jury trial on the State's allegation of his historical prior felony convictions. (Ex. AAA.) On January 24, 2003, the trial court held a hearing on all the priors. Just as occurred in the re-sentencing in cause number CR 2000-05622, the trial court accepted Petitioner's admission to his historical prior felony convictions (this time admitting four prior felony convictions) in exchange for the State's agreement to dismiss its on-release allegation. (Exs. BBB & CCC.)

On January 29, 2003, Petitioner was re-sentenced on Count 1 and ordered to serve the presumptive term of 15.75 years' imprisonment for the Class 2 felony of possession of dangerous drugs for sale with two historical prior felony convictions. (Exs. DDD & CCC.) The court ordered that the sentence run concurrently with the sentence imposed in CR 2000-005622. (*Id*.)

### 6. Post-Conviction Proceedings in CR 2001-005004

On September 24, 2003, Petitioner filed a notice of post-conviction relief under Arizona Rue of Criminal Procedure 32. (Ex. III.) Although the trial court filed a document on September 29, 2003, in which it acknowledged that Petitioner submitted the notice, the trial court apparently failed to further process the notice; on July 20, 2004, the trial court filed

- 11 -

a letter from Petitioner in which he asked for a status update on his notice of post-conviction relief and accompanying motion for counsel. (Exs. III-JJJ.) On March 3, 2005, Petitioner filed another notice of post-conviction relief, again explaining that he received no response from the trial court. (Ex. KKK.) The trial court eventually appointed an attorney, but the attorney disclosed that she was "unable to find any claims" to raise on post-conviction review and requested a 45 day extension of time to allow Petitioner to file petition in *pro per*. (Ex. LLL.) Subsequently, on October 31, 2005, Petitioner field a *pro se* petition for post-conviction relief. (Ex. MMM.) Petitioner raised two claims, an alleged violation of his rights to a speedy trial and an ineffective assistance of counsel claim, both based on the State's dismissal and refiling of the charges originally filed as Count 1 (possession of drugs for sale) in CR-2000-005622. (*Id.*)

On December 1, 2005, the State filed its response to the *pro se* petition, arguing that both the speedy trial claim and the speedy trial based ineffective assistance claim were precluded under Rule 32.2(a)(2) because the Petitioner raised the two claims on direct review in 1 CA-CR 01-0759 and the Arizona Court of Appeals resolved the claims against him. (Ex. NNN.) On February 2, 2006, pursuant to Rule 32.6(c) of the Arizona Rules of Criminal Procedure, the trial court summarily denied the post-conviction relief petition, indicating that the petition "fails to state a colorable claim for relief." (Ex. OOO.)

On March 2, 2006, Petitioner field a *pro se* petition for review by the Arizona Court of Appeals, raising the same two claims, and the State responded with the same arguments advanced before the trial court. (Exs. PPP-QQQ.) On January 16, 2007, the Arizona Court of Appeals summarily denied the petition for review. (Ex. RRR.)

On April 6, 2007, Petitioner filed *pro se* the instant petition for writ of habeas corpus, alleging two grounds for relief. In Ground I, Petitioner alleges that his state conviction violated the Fifth, Sixth and Fourteenth Amendments of the United States Constitution, and describes the facts underlying the claim as follows:

> Ineffective Assistance of Council [sic], my appointed council failed to move for a mistrial based on the State closing argument. The state repeatedly commented on how I had the

- 12 -

> chance to prove my innocence. Also appointed council failed to suppress evidence, failed to object to Detective Mendez testimony.

(Doc. No. 1, p. 5.) In Ground II, Petitioner asserts violation of the Fifth and Sixth Amendments, alleging that:

> The State had a confirmed trial date set on April 20, 2001 [in] CR 2000-005622. That State filed new charges on April 5, 2001, CR 2001-0054004, knowing that it had a confirm[ed] trial date set on April 20, 2001. Therefore giving the State more time to prepare for trial. It filed new charges before dismissing old charges. State cannot file new charges just to start the clock again. Therefore violating my right for a speedy trial . . . . My appointed consil [sic] failed to object or declare a mistrial at dismissal date. The State asked the court to dismiss without prejudice knowing that it already filed new charges of same offense.

(*Id.*, p. 6.) Respondent argues that the petition must be dismissed because Petitioner's claims are procedurally defaulted.

## II. LEGAL DISCUSSION

### A. Petitioner's Claims are Not Exhausted

Pursuant to 28 U.S.C. § 2254(b)(1), a prisoner must exhaust in state court every claim raised in his petition before petitioning for a writ of habeas corpus in federal court. *Duncan v. Henry*, 513 U.S. 364, 365-66 (1995); *McQueary v. Blodgett*, 924 F.2d 829, 833 (9th Cir. 1991). As the Ninth Circuit has explained:

> The Supreme Court has held that if a "petitioner [has] failed to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred," his claims are procedurally defaulted for purposes of federal habeas review.

*Smith v. Baldwin*, 466 F.3d 805, 811-12 (9th Cir. 2006) (citing *Coleman v. Thompson*, 501 U.S. 722, 735 n. 1 (1991).

To properly exhaust state remedies, a petitioner must "fairly present" his claims to the highest state court, as mandated under state law, in a procedurally appropriate manner. *O'Sullivan v. Boerkel*, 526 U.S. 838, 848 (1999). In non-death penalty cases in Arizona, a petitioner must fairly present his claims to the Arizona Court of Appeals by properly

- 13 -

pursuing them through the state's direct appeal process or through appropriate post-conviction relief, *Swoopes v. Sublett*, 196 F.3d 1008, 1010 (9th Cri. 1999), but need not seek discretionary review in the Arizona Supreme Court. *Crowell v. Knowles*, 483 F.Supp.2d 925, 928-30, 933 (D. Ariz. 2007).

A claim has been fairly presented if the petitioner has described both the operative facts and the federal legal theory on which the claim is based. *Bland v. Cal. Dep't of Corrections*, 20 F.3d 1469, 1472-73 (9th Cir. 1994), *overruled on other grounds by Schell v. Witek*, 218 F.3d 1017, 1025 (9th Cir. 2000) (en banc). The exhaustion requirement will not be met where the petitioner fails to fairly present his claims. *Roettgen*, 33 F.3d at 38.

Petitioner's first habeas claim alleges ineffective assistance of counsel based on his attorney's failure to move for a mistrial based on the State's closing argument and failure to object to the testimony of Detective Mendez. Petitioner raised these claims in his *pro se* supplemental brief he filed with the Arizona Court of Appeals in 1 CA-CR 01-0759, appealing the judgment in CR 2001-05004. (Ex. JJ.) In that brief, Petitioner argued, just as he does here, that his trial counsel rendered ineffective assistance by failing to move for the suppression of certain evidence, failing to object to Detective Mendez's testimony, and failing to move for a mistrial. (*Id.*, pp. 1-3.) However, in its July 5, 2002 Memorandum Decision, the Arizona Court of Appeals addressed both the propriety of allowing Detective Mendez to testify as an expert and of the prosecutor's comments during closing argument, both of which were resolved in the State's favor. (Ex. RR, pp. 6-9.) However, the court expressly declined to review Petitioner's claims of ineffective assistance, stating that:

> Our analysis below resolves [Petitioner's] concerns with the expert testimony and the closing argument. However, for most ineffective assistance claims, a direct appeal such as this provides an insufficient record for review. "Such claims generally should be pursued in post-conviction relief proceedings pursuant to Arizona Rule of Criminal Procedure 32. Because they are fact-intensive and often involve matters of trial tactics and strategy, trial courts are far better-situated to address these issues." *State v. Wood*, 180 Ariz. 53, 61, 881 P.2d 1158, 1166 (1994). *See also State v. Flores*, 195 Ariz. 199, 206, ¶ 29, 986 P.2d 232, 239 (App. 1999) (same). This direct appeal is not a method that permits our review of [Petitioner's] claim that his trial counsel was constitutionally ineffective.

(*Id.*, pp. 5-6.)

Despite the express direction from the Arizona Court of Appeals to file the ineffective assistance claims in a petition for post-conviction relief under Arizona Rule of Criminal Procedure 32, Petitioner failed to do so. Rather, in his petition for post-conviction relief, Petitioner complained about the violation of his speedy trial rights and his attorney's failure to object to the violation (which he also claims in Ground II of his habeas petition), but not his Ground I ineffective assistance claims. (Ex. MMM.) Thus, the record reflects that, by presenting the claims on direct appeal rather than through a petition for post-conviction relief, Petitioner failed to present his claims of ineffective assistance of counsel in a procedurally appropriate manner. *O'Sullivan*, 526 U.S. at 848; *see also State v. Spreitz*, 202 Ariz. 1, 3 (2002) ("[W]e reiterate that ineffective assistance of counsel claims are to be brought in Rule 32 proceedings. Any such claims improvidently raised in a direct appeal, henceforth, will not be addressed by appellate courts regardless of merit. There will be no preclusive effect under Rule 32 by the mere raising of such issues. The appellate court simply will not address them. This ensures criminal defendants timely and orderly opportunity to litigate ineffectiveness claims and, we believe, promote judicial economy by disallowing piecemeal litigation").

Petitioner's second habeas claim is also based on ineffective assistance of counsel, but raises his counsel's failure to object to the purported violation of his speedy trial rights. This claim was raised by Petitioner in his post-conviction relief proceedings, but Respondents contend that it was not raised as a federal issue. *See id.*

In his post-conviction brief on the issue, Petitioner complains about the time delay between the mistrial and retrial on Count 1. (Ex. MMM.) He describes the dismissal of the charges and subsequent refiling, then, citing *U.S. v. Cephas*, 937 F.2d 818 (2nd Cir. 1991), argues the "[g]overnment cannot launch [a] detainer against defendant and then throw out the clock every time it dismisses charges, only to start the clock anew by bringing new charges." (*Id.*, p. 2.) He then adds: "Also Defendant[s] right for [a] speedy trial were [sic] violated." (*Id.*) Finally, he asserts that "he was not represented by competent counsel and

- 15 -

further, that the failure of adequate representation prejudiced his case." (*Id.*) What cannot be easily discerned from his post-conviction relief petition is the nature and source of his claim. It is not clear if the claim is based on federal or state law and whether it is a statutory or constitutional claim. The trial court dismissed the petition as not containing a colorable claim for relief. (Ex. OOO.) Obviously, the determination of whether this claim was presented as a federal issue will turn on whether the citation to *U.S. v. Cephas* was adequate to alert the state court that Petitioner was asserting his rights pursuant to the federal speedy-trial law.

In *Cephas*, the court addressed the interpretation and interplay between the Interstate Agreement on Detainers Act, 18 U.S.C.App., pp. 585-620 (the "detainer act"), and the Speedy Trial Act of 1974, 18 U.S.C. § 3161 *et seq.,* (the "speedy trial act"). In his post-conviction petition, Petitioner did argue that the government cannot "launch a detainer" and then later dismiss and refile the charges. (Ex. MMM, p. 2.) In his habeas petition now before the Court, however, he has not re-raised the detainer-related argument and it therefore requires no further attention.

As for the speedy trial issue, the *Cephas* case does not address the general Sixth Amendment right, but discusses only the federal statutory right to a speedy trial. The general rule is that only a "federal" arrest triggers the running of the Speedy Trial Act, regardless of the degree of federal involvement in the state law enforcement activities. *See United States v. Redmond,* 803 F.2d 438, 440 (9th Cir. 1986), *cert. denied,* 481 U.S. 1032 (1987). Petitioner has not alleged that the federal government was in any way involved in his arrest; thus, the federal Speedy Trial Act does not apply. As Petitioner was tried and convicted in State court, the only federal speedy trial rights that might apply to Petitioner's case would be the rights provided in the Sixth Amendment. However, Petitioner made no mention of those rights in his brief to the trial court.

On appeal, however, Petitioner amended his speedy trial claim to expressly include a federal constitutional claim by not only alleging the violation of his speedy trial rights under Rule 8 of the Arizona Rules of Criminal Procedure, but also those under the Sixth

Amendment of the United States Constitution. (Ex. PPP.) Without addressing the merits, the Arizona Court of Appeals denied the petition. (Ex. RRR.)

Thus, the question is whether the basis of Petitioner's claim was adequately raised to be considered fairly presented. A claim has been fairly presented if the petitioner has described both the operative facts and the federal legal theory on which the claim is based. See *Tamalini v. Stewart,* 249 F.3d 895, 898-99 (9th Cir. 2001); *Bland v. Cal. Dep't of Corrections,* 20 F.3d 1469, 1472-73 (9th Cir. 1994), *overruled on other grounds by Schell v. Witek,* 218 F.3d 1017, 1025 (9th Cir. 2000) (en banc). Here, Petitioner did not present his federal legal theory to the trial court in his petition for post-conviction relief. He made no mention of the Sixth Amendment and cited no law related to the Federal Constitution's right to a speedy trial. He did subsequently raise the claim before the Arizona Court of Appeals, however, this was not procedurally appropriate under Arizona law. Ariz. R.Crim. P. 32.1(a)(3) (relief is precluded for claims waived at trial); Ariz. R.Crim. P. 32.5 ("The defendant shall include [in his petition for post-conviction relief] every ground known to him or her for vacating, reducing, correcting or otherwise changing all judgments or sentenced imposed upon him or her . . . ."). Accordingly, this claim was not fairly presented.

Where a prisoner fails to "fairly present" a claim to the State courts in a procedurally appropriate manner, state court remedies may, nonetheless, be "exhausted." This type of exhaustion is often referred to as "procedural default" or "procedural bar." *Ylst v. Nunnemaker*, 501 U.S. 797, 802-05 (1991); *Coleman,* 501 U.S. at 731-32. A state post-conviction action is futile where it is time-barred. *Beaty,* 303 F.3d at 987; *Moreno v. Gonzalez*, 116 F.3d 409, 410 (9th Cir. 1997) (recognizing untimeliness under Ariz. R.Crim. P. 32.4(a) as a basis for dismissal of an Arizona petition for post-conviction relief, distinct from preclusion under Rule 32.2(a)). As Respondents contend, that is the situation faced by Petitioner here. Petitioner, if permitted to return to State court, cannot meet the requirement under Rule 32.4 that the petition for post-conviction relief be filed "within ninety days after the entry of judgment and sentence or within thirty days after the issuance of the order and mandate in the direct appeal, whichever is the later. . . . Ariz.R.Crim.P. 32.4(a). Such an

attempt would also be precluded under Rule 32.2(a)(3), which precludes post-conviction relief on any ground "that has been waived at trial, on appeal, or in any previous collateral proceeding." Thus, this claim was not fairly presented and is procedurally defaulted because Petitioner "failed to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would not find the claims procedurally barred." *Coleman v. Thompson*, 501 U.S. 722, 735 n. 1 (1991); *see also Smith v. Baldwin*, 466 F.3d 805, 811-12 (9th Cir. 2006).

A federal court will not consider unexhausted and procedurally defaulted claims unless the petitioner can establish that a miscarriage of justice would result, or establish cause for his noncompliance and actual prejudice. *See Schlup v. Delo*, 513 U.S. 298, 321 (1995). To demonstrate cause, a petitioner must establish that some objective factor external to the defense impeded his efforts to comply with the stat's procedural rules. *Id*. To establish a "miscarriage of justice," Petitioner must establish that a Constitutional violation has resulted in the conviction of one who is actually innocent. *Murray v. Carrier*, 477 U.S. 478, 495-96 (1986). In the instant matter, Petitioner has made no claim of cause and prejudice or of a miscarriage of justice. Nothing in the original petition can be construed to support such an argument and Petitioner has not replied to the Respondents' arguments. Moreover, the Court can find no basis in the record for such a claim. As such, Petitioner's claims are procedurally defaulted and cannot be reviewed by this Court.

**III.   RECOMMENDATION**

For all of the above reasons, **THE MAGISTRATE JUDGE RECOMMENDS** that the District Court, after its independent review, **DISMISS WITH PREJUDICE** Petitioner's Petition for Writ of Habeas Corpus [Docket No. 1].

This Recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the District Court's judgment.

However, the parties shall have ten (10) days from the date of service of a copy of this recommendation within which to file specific written objections with the District Court. *See*

1  28 U.S.C. § 636(b)(1) and Rules 72(b), 6(a) and 6(e) of the Federal Rules of Civil Procedure.
2  Thereafter, the parties have ten (10) days within which to file a response to the objections.
3  If any objections are filed, this action should be designated case number: **CV 07-0717-PHX-**
4  **PGR**.  Failure to timely file objections to any factual or legal determination of the Magistrate
5  Judge may be considered a waiver of a party's right to *de novo* consideration of the issues.
6  *See United States v. Reyna-Tapia* 328 F.3d 1114, 1121 (9th Cir. 2003) (*en banc*).
7       DATED this 14th day of July, 2009.

_____
Jacqueline Marshall
United States Magistrate Judge